FILED

03/10/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0219

DA 18-0219

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2020 MT 56

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

MICHAEL WAYNE GEORGE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-16-113
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

        William F. Hooks, Law Office of William F. Hooks, Helena, Montana

        For Appellee:

        Timothy C. Fox, Montana Attorney General, Roy Brown, Assistant Attorney General, Helena, Montana

        Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  January 8, 2020

Decided:  March 10, 2020

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1    Michael George appeals his conviction of felony DUI, disorderly conduct, and driving with a suspended license. He seeks reversal on his unpreserved claim that the District Court violated his fundamental right to be present when it discussed with counsel in his absence the potential substitution of an alternate juror. Applying our plain error review standard, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2    George was charged with multiple offenses in the Nineteenth Judicial District Court, Lincoln County. The case proceeded to a jury trial. On the second morning of trial, the court's recording equipment malfunctioned, and the court excused the jury and continued the trial. When trial resumed several days later, a juror failed to appear due to a misunderstanding. The court met with counsel to discuss the juror's absence. The court proposed that the juror, who lived more than an hour away, be replaced with an alternate rather than requiring the absent juror to travel to the courthouse. Defense counsel objected, arguing that George had a right "to the jury he selected" and that a brief trial delay was not a justifiable reason to substitute an alternate juror. Defense counsel noted that because another juror was absent also and traveling to the court, the trial would be delayed regardless. George was in custody and not present for this discussion. Defense counsel did not speak with him before the morning's conference with the court. Counsel did not object to George's absence. In fact, when asked by the District Judge whether they should wait for George to hold the conference, defense counsel stated they could proceed in his

2

absence. The court decided not to substitute the alternate juror, telephoned the absent juror with counsel present, and informed him that his attendance was required. The trial resumed at 12:15 p.m. that day after the juror arrived. The case went to the jury later that afternoon. The court conducted several additional conversations with counsel regarding the jury deliberations, considering the inclement weather and late time of day. George was not present for these additional conversations, but the court inquired into his absence each time, and defense counsel agreed each time to proceed without him.

¶3 The court allowed the jury to continue deliberating but informed the jurors that they did not need to render a verdict that evening and that they would be reimbursed for hotel expenses if they stayed overnight. At 8:27 p.m., the court reconvened for the jury's verdict. The jury found George guilty of DUI, disorderly conduct, and driving with a suspended license.

## STANDARD OF REVIEW

¶4 This Court generally does not address issues raised for the first time on appeal. *State v. Hatfield*, 2018 MT 229, ¶ 15, 392 Mont. 509, 426 P.3d 569. We discretionally may review unpreserved claims alleging errors implicating a criminal defendant's fundamental rights under the common law plain error doctrine. *State v. Akers*, 2017 MT 311, ¶ 13, 389 Mont. 531, 408 P.3d 142 (citing *State v. Taylor*, 2010 MT 94, ¶ 12, 356 Mont. 167, 231 P.3d 79).

**DISCUSSION**

¶5      When reviewing unpreserved claims of error, we employ the plain error doctrine sparingly, on a case-by-case-basis, considering the "totality of circumstances of each case." *Akers*, ¶ 13 (citing *State v. Lindberg*, 2008 MT 389, ¶ 34, 347 Mont. 76, 196 P.3d 1252). "Simply requesting that this Court review an unpreserved issue under the plain error doctrine is not enough." *State v. Daniels*, 2019 MT 214, ¶ 31, 397 Mont. 204, 448 P.3d 511 (citing *State v. Norman*, 2010 MT 253, ¶ 17, 358 Mont. 252, 244 P.3d 737).  The party requesting reversal because of plain error bears the burden of firmly convincing this Court that the claimed error implicates a fundamental right and that such review is necessary to prevent a manifest miscarriage of justice or that failure to review the claim may leave unsettled the question of fundamental fairness of the proceedings or may compromise the integrity of the judicial process.  *Akers*, ¶ 13 (citing *Taylor*, ¶ 12); *see also Hatfield*, ¶ 15 (citing *State v. Lawrence*, 2016 MT 346, ¶ 9, 386 Mont. 86, 385 P.3d 968); *State v. Finley*, 276 Mont. 126, 137, 915 P.2d 208, 215 (1996), *overruled, in part, on other grounds by State v. Gallagher*, 2007 MT 39, ¶ 21, 304 Mont. 215, 19 P.3d 817; *State v. Favel*, 2015 MT 336, ¶ 23, 381 Mont. 472, 362 P.3d 1126.  Thus, "we first ask if the alleged error implicates a fundamental right; we next ask if failure to review the alleged error would result in one of these consequences." *Hatfield*, ¶ 15 (citing *Taylor*, ¶ 14).  We may then invoke our discretion and reverse the trial court. *Favel*, ¶ 28.

¶6      George points out that he has a due process right to be present at all critical stages of the criminal proceedings against him.  U.S. Const. amend. VI; Mont. Const. art. II, § 24;

4

*State v. Robinson*, 2014 MT 279, ¶ 37, 376 Mont. 471, 336 P.3d 367 (citing *State v. Matt*, 2008 MT 444, ¶¶ 16-17, 347 Mont. 530, 199 P.3d 244, *overruled, in part, on other grounds by State v. Charlie*, 2010 MT 195, ¶ 45, 357 Mont. 355, 239 P.3d 934).  He argues that by holding the conversations regarding the absent juror in his absence, the District Court violated his right to be present, thus satisfying the first requirement of plain error review. The State responds that the District Court's alleged error did not implicate George's substantial rights because it was an administrative matter regarding jury scheduling and did not implicate a fundamental right.

¶7     In *Hatfield*, ¶ 29, we held that the defendant's fundamental right to be present was implicated when he was absent during several sidebars and in-chambers discussions and thus satisfied the first requirement for plain error review.  Similarly, in *State v. Kennedy*, 2004 MT 53, ¶ 27, 320 Mont. 161, 85 P.3d 1279, we held that the trial judge's discussion with the jury in the defendant's absence violated the defendant's right to be present.  And in *State v. Tapson*, 2001 MT 292, ¶¶ 27-28, 307 Mont. 428, 41 P.3d 305, we held that Tapson's fundamental right to be present was implicated when the trial judge entered the jury room while the jury was deliberating.  We agree with George that his fundamental right to be present was implicated when the District Court discussed substitution of an alternate juror and spoke to the absent juror without George present, implicating his right to be present and satisfying the first requirement for plain error review.

¶8     Under the second step of plain error review, we determine if our failure to review an alleged violation of a fundamental right may result in a manifest miscarriage of justice,

5

leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *Akers*, ¶ 13. George asserts that he was denied a meaningful opportunity to contribute to decisions affecting his jury when the court held discussions regarding the jury composition in his absence, raising questions of the fundamental fairness of the proceedings against him. According to George, the mid-trial discussions could have resulted in either of two outcomes—the original juror or the alternate juror sitting on the jury—both of which would directly affect his trial. George contends that the decisions made at the conference held in his absence altered the trial by delaying it substantially to accommodate the absent juror's travel to court. The case then went to the jury much later, and the deliberations went into the night. Had he been present, George contends he could have provided input on how his trial should proceed.

¶9 The State responds that George has not met his burden to show that a manifest miscarriage of justice would result should George's conviction stand on this record. The State again asserts that George's substantial rights were not affected. It argues that the decisions made in George's absence did not alter the composition of the jury that he had selected. The State asserts that George has not met his burden to firmly demonstrate that reversal is required because he speculates as to how his presence at the conference could have been meaningful and beneficial.

¶10 When reviewing alleged violations of the fundamental right to be present, we have considered a defendant's lack of opportunity to observe and provide input, even when a conversation between the court and counsel involved "purely legal" issues. *Matt*, ¶ 21.

6

On this record, however, we are not "firmly convinced" that the violation of George's right to be present has resulted in a miscarriage of justice or calls the fundamental fairness of his trial into question.

¶11    *Akers* offers an instructive example of when plain error warrants a new trial. We held there that the District Court's failure to properly instruct the jury on the State's burden of proof implicated each of the plain-error-review criteria, and, at a minimum, left unsettled the question of the fundamental fairness of the proceeding. *Akers*, ¶ 17. We reversed Akers's conviction. *Akers*, ¶ 21. We looked at the fact that the jury instruction error implicated which party bore the burden of proof in establishing Akers's guilt and recognized that "an accused is 'protected by standards of proof designed to exclude as nearly as possible the likelihood of an erroneous judgment.'" *Akers*, ¶ 17 (citing *Addington v. Texas*, 441 U.S. 418, 423, 99 S. Ct. 1804, 1808 (1979)). We concluded that where a jury had not properly been instructed on the burden of proof, we "cannot be assured of the fairness or have confidence in its determination of guilt." *Akers*, ¶ 17.

¶12    George's right-to-be-present argument does not raise the same fundamental fairness concern as in *Akers*. The District Court's discussion regarding the potential juror substitution did not affect the jury's composition because George already had accepted the alternate as a juror in the jury selection process. The jury had been selected and vetted properly. And the discussion involving the absent juror resulted in George maintaining the same jury he initially chose. Unlike *Akers*, this did not result in an "erroneous judgment" or implicate the substance of the proceedings.

7

¶13 George argues that he might have chosen to substitute the absent juror because that juror would have to drive almost two hours to get to trial and the trial would be delayed, resulting in late-night jury deliberations. Essentially, he seems to suggest that the delay would influence the jury's ultimate verdict. The record shows that there was another juror who was confused by the trial scheduling and that the trial would have been delayed regardless to allow that juror to attend. The record also shows that the District Court was mindful of the late-night deliberations and assured the jury that "there's no pressure to get it all done tonight" and that it could resume deliberations in the morning. The court also provided specific information about motel reimbursement for jurors who had to travel and stay the night.

¶14 We are mindful of George's burden to "firmly convince" this Court that failing to review the unpreserved claim implicating his fundamental right to be present would result in a manifest miscarriage of justice, leave unsettled the question of the fundamental fairness of the trial or proceedings, or compromise the integrity of the judicial process. *Favel*, ¶ 23 (internal citations omitted). Having reviewed the record, we are not convinced that George has met that standard. We decline to reverse George's conviction on his unpreserved claim. Affirmed.

/S/ BETH BAKER

We concur:

/S/ MIKE McGRATH
/S/ JIM RICE
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON

8